UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBBIE FRANKS,<br>INDIVIDUALLY AND ON BEHALF<br>OF ESTATE OF LAWRENCE FRANKS<br><br>VERSUS<br><br>STATE NATIONAL INSURANCE<br>COMPANY | CIVIL ACTION<br><br><br><br>23-437-SDD-RLB |

## RULING

This matter is before the Court on the Motion for Partial Summary Judgment filed by Plaintiff Robbie Franks, both individually and on behalf of the estate of Lawrence Franks.[1] Defendant State National Insurance Company ("State National") filed an Opposition,[2] and Plaintiff filed a Reply.[3] For the reasons that follow, the Motion will be denied.

### I.    BACKGROUND

This case arises from an automobile accident. On September 13, 2017, Lawrence Franks was a passenger in a van owned by Reliant Transportation / Reliant On Call, LLC ("Reliant") and being operated by Larry Frank, an employee of Reliant.[4] Lawrence Franks was in a wheelchair in the back of the van.[5] The van collided with a truck driven by Kenneth O'Connor.[6] As a result of the collision, "Lawrence Franks was thrown from the

---

[1] Rec. Doc. 25.
[2] Rec. Doc. 29.
[3] Rec. Doc. 32.
[4] Rec. Docs. 25-2 & 29-1, ¶ 1.
[5] *Id.*
[6] *Id.*

wheelchair onto the floor of the van, with his neck strung up by the seatbelt."[7] Lawrence Franks allegedly "sustained serious injuries in the accident, which resulted in two separate neck operations and a complete fusion (seven levels) of his cervical spine."[8]

Lawrence Franks and his wife, Robbie Franks, filed suit in state court against Larry Frank, Reliant, and State National (Reliant's liability insurer).[9] By letter dated January 7, 2020, Lawrence Franks demanded policy limits ($1,000,000) from State National as a settlement of "the bodily injury portion of his [ ] claim."[10] State National did not accept the demand. The case proceeded to trial, where the jury found Larry Frank 100% at fault.[11] Lawrence Franks was awarded $3,316,421.49 in general and special damages, and Robbie Franks was awarded $500,000 for loss of consortium.[12] Both Larry Frank and Reliant later executed agreements assigning their rights to pursue bad faith actions against State National to Lawrence Franks and Robbie Franks.[13]

After the death of Lawrence Franks, Robbie Franks ("Plaintiff") initiated the instant action in state court against State National,[14] which State National removed to this Court on diversity grounds.[15] Plaintiff claims that State National was in bad faith by arbitrarily and capriciously failing to settle the underlying lawsuit for policy limits, thereby exposing Larry Frank and Reliant to an excess judgment at trial.[16] Plaintiff now seeks partial summary judgment on "certain factual issues."[17]

---

[7] *Id.* at ¶ 2.
[8] Rec. Doc. 1-3, ¶ 5.
[9] Rec. Doc. 25-3.
[10] Rec. Docs. 25-2 & 29-1, ¶ 7; Rec. Doc. 25-27.
[11] Rec. Docs. 25-2 & 29-1, ¶ 4.
[12] *Id.* at ¶ 5.
[13] *Id.* at ¶ 6.
[14] Rec. Doc. 1-3, pp. 1–9.
[15] Rec. Doc. 1.
[16] Rec. Doc. 1-3, ¶¶ 16–20.
[17] Rec. Doc. 25-1, p. 6.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[18] This determination is made "in the light most favorable to the opposing party."[19] "When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial."[20] If the moving party satisfies its burden, "the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."[21] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[22]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[23] All reasonable factual inferences are drawn in favor of the nonmoving party.[24] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary

---

[18] FED. R. CIV. P. 56(a).
[19] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).
[20] *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 333–34 (1986)).
[21] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986)).
[22] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).
[23] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson*, 477 U.S. at 248).
[24] *Galindo v. Precision American Corp*., 754 F.2d 1212, 1216 (5th Cir. 1985).

judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[25] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment."[26]

### B. Louisiana Law Regarding Insurer's Failure to Settle

Pursuant to La. R.S. 22:1892, "[a]n insurer … owes to its insured a duty of good faith and fair dealing."[27] An "insurer may be liable for an excess judgment rendered against the insured if its refusal to settle within policy limits is found to be arbitrary or in bad faith."[28] As the Louisiana Supreme Court stated in *Smith v. Audubon Ins. Co.*:

> In the absence of bad faith, a liability insurer generally is free to settle or to litigate at its own discretion, without liability to its insured for a judgment in excess of the policy limits. … On the other hand, a liability insurer is the representative of the interests of its insured, and the insurer, when handling claims, must carefully consider not only its own self-interest, but also its insured's interest so as to protect the insured from exposure to excess liability.[29]

The court further explained:

> Of course, an insurer is not obliged to compromise litigation just because the claimant offers to settle a claim for serious injuries within the policy limits, and its failure to do so is not by itself proof of bad faith. … [W]hen an insurer has made a thorough investigation and the evidence developed in the investigation is such that reasonable minds could differ over the liability of the insured, the insurer has the right to choose to litigate the claim, unless other factors, such as a vast difference between the policy limits and the insured's total exposure, dictate a decision to settle the claim.[30]

---

[25] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[26] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994).
[27] La. R.S. 22:1892(I)(1).
[28] *Ragas v. MGA Ins. Co.*, No. 96-2263, 1997 WL 79357, at *2 (E.D. La. Feb. 21, 1997) (citing *Keith v. Comco Ins. Co.,* 574 So. 2d 1270, 1277 (La.App. 2nd Cir. 1991)).
[29] *Smith v. Audubon Ins. Co.*, 95-2057 (La. 9/5/96), 679 So. 2d 372, 376 (citing William Shelby McKenzie & H. Alston Johnson, III, 15 *Louisiana Civil Law Treatise–Insurance Law and Practice* § 218 (1986); *Holtzclaw v. Falco, Inc.,* 355 So. 2d 1279 (La.1978) (on rehearing)).
[30] *Id.* at 377.

Relevant considerations in determining whether an insurer acted in bad faith in deciding to proceed to trial include "the probability of the insured's liability, the extent of the damages incurred by the claimant, the amount of the policy limits, the adequacy of the insurer's investigation, and the openness of communications between the insurer and the insured."[31] The analysis involved in the bad faith determination is highly fact-intensive.[32]

## C. Discussion

Plaintiff makes clear that she "is not [ ] asking this Court to rule that State National breached its obligation to accept Plaintiff's Policy Limit Demand or failed to timely offer limits," recognizing that whether an insurer refused to settle a case in bad faith "is inherently a factual question reserved to the factfinder."[33] Rather, Plaintiff moves for partial summary judgment specifically requesting the Court to find the following:

- "State National did not have a reasonable liability defense;"
- "State National did not have a reasonable causation defense" with respect to Lawrence Franks' two cervical surgeries;
- "Larry Frank was not told [that Lawrence Franks] would settle for policy limits;" and
- "Larry Frank was not told the extent of [Lawrence Franks'] injuries or the cost of [Lawrence Franks'] past and future medical treatment."[34]

### 1. Reasonable Liability Defense

Plaintiff argues that at the time the policy limit demand was made, State National knew that Larry Frank was the only witness who contended he was not at fault in causing

---

[31] *Id.*
[32] *Id.*
[33] Rec. Doc. 25-1, p. 6.
[34] *Id.*

the accident.[35] Plaintiff explains that three other witnesses had stated Larry Frank was at fault: Kenneth O'Connor (driver of the other vehicle); John Vidrine (passenger in Kenneth O'Connor's vehicle); and Tina Frank (an independent eyewitness, unrelated to Larry Frank, who purportedly observed the accident from the parking lot of a nearby gas station).[36] Plaintiff argues State National's reliance on its own insured driver's testimony was insufficient to constitute a reasonable defense to liability.[37] Plaintiff further explains that State National unreasonably relied on photographs of skid marks on the shoulder of the road, which Plaintiff contends did not provide a reasonable defense to liability.[38] Additionally, Plaintiff asserts State National's investigation was inadequate due to its failure to depose Tina Frank, John Vidrine, and Neil O'Connor (another occupant of Kenneth O'Connor's vehicle).[39] Plaintiff maintains that State National "would have realized the strong probability of a finding of negligence on the part of Larry Frank" if it had deposed those three witnesses.[40] Moreover, leading up to trial, State National's counsel, James Rivera, expressed his opinion multiple times that Larry Frank would likely be held liable.[41]

State National does not dispute that at the time of the settlement demand, it was in possession of the statements of John Vidrine, Kenneth O'Connor, and Tina Frank, who all said Larry Frank was at fault in causing the accident.[42] Furthermore, Rivera advised State National that due to the other witnesses, "more likely than not I suspect we will be

---

[35] *Id.* at pp. 12–13.
[36] *Id.*
[37] *Id.*
[38] *Id.* at p. 15.
[39] *Id.* at pp. 13–15.
[40] *Id.*
[41] *See* Rec. Doc. 25-8, p. 31; Rec. Doc. 25-4; Rec. Doc. 25-13, p. 1.
[42] Rec. Docs. 25-2 & 29-1, ¶¶ 10, 13–17.

found solely at fault."[43] However, State National argues that the reasonableness of its liability defense and investigation "is clearly a question for the jury."[44] State National explains that it chose to believe the position of its insured, who adamantly declared that he was not at fault, over the contentions of the other witnesses, who it believed were "interested parties" or otherwise unreliable.[45] State National reasons that, "[w]hile the jury chose to believe Plaintiff's version of events, there was every possibility that the testimony of Larry Frank, the photographs, and the examination of the other driver or any other witness who was at the scene of the accident, could have convinced the jury otherwise."[46]

"[T]he determination of whether the insurer acted in bad faith turns on the facts and circumstances of each case" and it involves the "weighing" of certain factors, one of which is the "probability of the insured's liability."[47] The Court finds that Plaintiff is not entitled to a summary judgment finding that State National had no reasonable defense to liability. It is apparent that the witnesses in favor of Plaintiff at trial outnumbered the witnesses in favor of Larry Frank. However, the current record is insufficient to establish that reasonable minds could not have differed as to Larry Frank's sole fault. For example, the photographs which State National relied upon to support its case are not in the record, making it impossible to assess the effect the photographs may have had on the reasonableness of State National's defense. And even if the photographs were in the record, the Court's function at the summary judgment stage is not to weigh the evidence.[48] Plaintiff makes a conclusory argument that the photographs were not helpful to State

---

[43] Rec. Doc. 25-4, p. 1.
[44] Rec. Doc. 29, p. 4.
[45] *Id.* at p. 5.
[46] *Id.*
[47] *Kelly v. State Farm Fire & Cas. Co.*, 2014-1921 (La. 5/5/15), 169 So. 3d 328, 340 (citing *Smith*, 679 So. 2d at 377).
[48] *Anderson*, 477 U.S. at 249.

National, but Rivera held the view leading up to trial that the photographs "seem to indicate the accident occurred on the shoulder of the roadway and possibly corroborate [Larry Frank's] version of the incident."[49] The overall reasonableness of State National's defense to liability is an issue for the jury.

Plaintiff cites three cases for the proposition that "a reasonable liability defense does not exist if the only witness saying that the accident was not the insured's fault is the insured."[50] However, none of the cases put forth such a bright line rule. In *Richard v. USAA Casualty Ins. Co.*, another section of this Court indicated that an insurer may not "simply rely upon the statements made by the insured and the opinions of others *without also conducting or considering its own research and calculations and coming to its own conclusions about its exposure*."[51] Here, State National argues it did not solely rely on Larry Frank's statements, but also conducted its own investigation and relied on photographs and other indications of third-party fault.[52] In *Maryland Cas. Co. v. Dixie Ins. Co.*, the Louisiana First Circuit Court of Appeal found that the insurer failed to settle a case in bad faith, reversing the judgment of the trial court.[53] The insured driver contended he was not at fault, but several facts made it clear that the insured's failure to settle was arbitrary and in bad faith. For example, the police report indicated the insured driver was intoxicated and was charged with D.W.I.[54] Additionally, a claims representative had

---

[49] Rec. Doc. 25-10, p. 1.
[50] Rec. Doc. 25-1, p. 11.
[51] *Richard v. USAA Cas. Ins. Co.*, No. 17-CV-00175-BAJ-EWD, 2019 WL 137609, at *5 (M.D. La. Jan. 8, 2019) (emphasis added). In *Richard*, the court denied the *insurer's* motion for summary judgment on the bad faith claim, making the case procedurally distinguishable from the instant matter.
[52] Rec. Doc. 29, p. 6.
[53] *Maryland Cas. Co. v. Dixie Ins. Co.*, 622 So. 2d 698 (La.App. 1st Cir.), *writ denied*, 629 So. 2d 1138 (La.1993).
[54] *Id.* at 699.

characterized the insurer's liability as "100%," and the attorney communicated to the insurer that "this is a case where liability is clear against our insured."[55]

Plaintiff's strongest citation is to *Hodge v. American Fidelity Fire Ins. Co.*, where the Louisiana First Circuit affirmed the trial court's judgment finding the insurer failed to settle in bad faith.[56] The court found it significant that, although the insured driver consistently maintained she was not at fault, the insurer was aware of an independent eyewitness who maintained otherwise. The court found "no evidence in the record to indicate any attempt by [the insurer] to contact that witness and ascertain his account of the accident. Had it done so, [the insurer] would have realized the strong probability of a finding of negligence on the part of [the insured driver]."[57] The insurer also failed to secure the depositions or attendance at trial of three occupants in the insured driver's car.[58]

Importantly, both the *Maryland* and *Hodge* cases went through a full trial on the merits on the bad faith action. Although support for Plaintiff's position can be found within the reasoning of those cases, the Court does not find that the current record establishes no reasonable juror could find that State National had any "reasonable" defense to liability. Accordingly, Plaintiff's Motion for Partial Summary Judgment will be denied in this respect.

  2. **Reasonable Causation Defense**

Lawrence Franks underwent two cervical surgeries after the accident.[59] The first took place in December of 2017, and the second took place in October of 2018.[60] Plaintiff contends both surgeries were due to neck pain caused by the accident. Plaintiff argues

---

[55] *Id.* at 701.
[56] *Hodge v. Am. Fid. Fire Ins. Co.*, 486 So. 2d 233 (La. App. 3rd Cir.), *writ denied*, 489 So. 2d 917 (La.1986).
[57] *Id.* at 238–39.
[58] *Id.*
[59] Rec. Docs. 25-2 & 29-1, ¶ 3.
[60] Rec. Doc. 25-1, pp. 18–20.

that when the policy limit demand was made, State National knew there was no evidence that Lawrence Franks complained of any neck pain prior to the accident.[61] Plaintiff acknowledges that Lawrence Franks had an "odontoid issue" which existed prior to the accident, but maintains "there were no medical records showing pre-crash neck complaints."[62] At trial, Lawrence Franks' treating physician, Dr. George Williams, testified that the pre-existing odontoid issue was made unstable by the accident, necessitating the first surgery.[63] Plaintiff contends Lawrence Franks' second surgery was necessary due to continuing neck pain from the accident.[64]

Significantly, Rivera informed State National slightly over three months before trial that "we have no evidence of [Lawrence Franks] having neck pain prior to the accident."[65] About a month before that, Rivera wrote to State National that although they had "some colorable arguments" regarding causation, "we really don't have very compelling arguments" with respect to the second surgery because Lawrence Franks "was not having complaints of pain that we could find pre-accident in his neck."[66] Nonetheless, State National now argues it had a reasonable defense as to causation for both surgeries because Lawrence Franks "had prior, subsequent, and intervening injuries, including prior cervical injuries and multiple subsequent falls."[67] State National points to the deposition testimony of Dr. Stephen Wyble, Lawrence Franks' pain management physician. Dr Wyble noted that shortly prior to the accident, Lawrence Franks "had a fairly massive

---

[61] *Id.* at p. 16.
[62] *Id.*
[63] Rec. Docs. 25-2 & 29-1, ¶ 29.
[64] Rec. Doc. 25-1, pp. 19–20.
[65] Rec. Doc. 25-16, p. 2.
[66] Rec. Doc. 25-13, pp. 2, 5.
[67] Rec. Doc. 29, p. 6.

stroke on the left – affecting the left side of his body. That didn't help – that can cause pain, too. So he had – he had multi-factorial."[68]

In the underlying state court case, Lawrence and Robbie Franks filed a motion *in limine* seeking to exclude any reference at trial to Lawrence Franks' strokes which occurred both before and after the accident, including any argument that the strokes affected his injuries.[69] In denying the motion, the trial judge found, in pertinent part, as follows:

- "The court finds that evidence and testimony as to [Lawrence] Franks' stroke suffered on September 11, 2017 to be crucial to [Lawrence] Franks' injuries, medical condition and damages … As such the court finds that the said September 11, 2017 stroke *is not only relevant but necessary as to the issues of causation and convexity* and should [ ] be presented to the jury as the trier of facts in this matter at bar."[70]

- "…as to the issues of causation and convexity of [Lawrence] Franks' injuries, prescribed medical treatment, residual effects and damages, as it relates to any stroke suffered subsequent to September 13, 2017 and any effect on his injuries at issue in this case at bar, this court finds [ ] said evidence to be *very relevant and necessary* to be present[ed] to the jury as the trier of fact in this case at bar."[71]

The Court finds summary judgment inappropriate on this issue. In addition to Dr. Williams and Dr. Wyble, both parties reference the names of multiple doctors who testified

---

[68] Rec. Doc. 31-6, p. 3.
[69] Rec. Doc. 31-7.
[70] Rec. Doc. 31-8, p. 1 (emphasis added).
[71] *Id.* at p. 3 (emphasis added).

in connection with this matter, but both parties' briefs lack clarity regarding the role each doctor played in this dispute. In short, Plaintiff and State National have differing interpretations of the doctor's statements and opinions. Additionally, aside from the disputed medical testimony, the state trial court found that State National had evidence that was "relevant and necessary" to the issue of causation with respect to Lawrence Franks' damages. It will be the jury's role to determine whether the evidence was sufficient to provide State National with a good faith basis to try the case.

### 3. Insurer's Communication with Insured

One of the factors to be weighed in a bad faith failure to settle action is the openness of communications between the insurer and the insured."[72] Plaintiff asks the Court to find that State National failed to communicate two specific pieces of information to Larry Frank: 1) that Lawrence Franks had offered to settle for policy limits; and 2) the extent of Lawrence Franks' injuries and medical expenses.[73]

The Court will deny summary judgment on both points. At one point in his deposition, Larry Frank indicates he was not told about the potential settlement prior to trial.[74] However, Larry Frank also indicated that he often did not read correspondence that he received regarding the case and his liability.[75] He further testified that he "spoke with Mr. Rivera a lot."[76] Whether State National's communication with Larry Frank was reasonable under the circumstances is an issue for the jury.

\* \* \*

---

[72] *Smith*, 679 So. 2d at 376 (citations omitted).
[73] Rec. Doc. 25-1, p. 6.
[74] Rec. Doc. 25-30, p. 4.
[75] Rec. Doc. 29-3, p. 3.
[76] *Id.* at p. 2.

Plaintiff's Motion and supporting evidence certainly raise questions regarding State National's decision not to settle the case. However, several courts have recognized that summary judgment is generally not appropriate "when a claim against an insurer for bad-faith penalties depends on factual determinations with respect to the reasonableness of the insurer's actions."[77] Plaintiff attempts to limit its Motion to a request for "certain factual findings,"[78] but those findings are inherently intertwined with the ultimate question of whether State National was in bad faith, and they all involve an assessment of the reasonableness of State National's actions. For all the reasons provided herein, the Court finds summary judgment inappropriate.

### III. CONCLUSION

Accordingly,

Plaintiff's Motion for Partial Summary Judgment[79] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 24th day of _____June_____, 2025.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[77] *Twine v. Allstate Ins. Co.*, No. CV 15-5168, 2016 WL 7450472, at *7 (E.D. La. Dec. 28, 2016) (citing *Cedar Ridge, LLC v. Landmark Am. Ins. Co.*, No. 13-672, 2014 WL 906211, at *2 (E.D. La. Mar. 7, 2014)). *See also Babineaux v. United Nat'l Ins. Co.*, 616 F. Supp. 3d 581, 587 (W.D. La. 2022).
[78] Rec. Doc. 25-1, p. 6.
[79] Rec. Doc. 25.